**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANNETTE NEGRON<br><br>                              Plaintiffs,<br><br>- against –<br><br>TOP CLASS MANAGEMENT INC.,<br>SUNSHINE DAYS ADULT SOCIAL DAY<br>CARE, HERITAGE MEDICAL SUPPLY INC.,<br>FRANK OGBONUBA, and ANNA MARIE<br>THOMPSON<br>                              Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Jannette Negron ("Plaintiff"), by and through her undersigned attorneys, hereby files this Complaint against Defendants Top Class Management Inc., Sunshine Days Adult Social Day Care, Heritage Medical Supply Inc., and Frank Ogbonuba (collectively "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that she is entitled to recover from Defendant: all statutory damages including (1) unpaid overtime, (2) liquidated damages, (3) pre-judgment interest, (4) post judgment interest and (5) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL") Article 6 §§190 et seq., Article 7 § 200 et seq., Article 19 §§650 et seq. and 12 New York Rules and Regulations Part 142 that she is entitled to recover from Defendant: all statutory damages including (1) unpaid overtime, (2) unpaid spread of hours premium, (3) liquidated damages, (4) pre-judgment interest, (5) post judgment interest and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §2l6(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.  Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.  Plaintiff Jannette Negron, is a resident of Bronx, New York.

6.  Defendant Top Class Management, Inc. (Top Class") is a domestic business corporation organized under the laws of New York, with a principal executive office and an address for service of process located at 1150 Webster Ave., Ste. 2, Bronx, NY 10456.

7.  Defendant Sunshine Days Adult Social Day Care ("Sunshine") is a business, which operates at 1150 Webster Ave., Ste. 1, Bronx, NY 10456.

8.  Defendant Heritage Medical Supply, Inc. ("Heritage") is a domestic business corporation which operates at 142 W 1st Street. Mount Vernon, NY 10550.

9.  Defendant Frank Ogbonuba is a natural person.

10. Defendant Anna Marie Thompson is a natural person.

11. Upon information and belief, at all times, Defendant Top Class, Defendant Sunshine, and Defendant Heritage each have a gross annual revenues in excess of $500,000.00.

12. At all times relevant to this action, Jannette Negron was an "employee" covered by the NYLL and FLSA. Defendants were an "employer" as those terms are defined by FLSA § 203(e), New York Labor Law §§ 651(5) and (6) and applicable regulations, 12 N.Y.C.R.R. § 142- 2.14.

## STATEMENT OF FACTS

13. Defendant Top Class provides services medical staff for medical practices.

14. Defendant Sunshine provides is a community center that caters to senior citizens.

2

15. Defendant Heritage provides back, ankle, and knee braces to the medical practices.

16. Heritage provides braces to at least one medical practice located inside of 1150 Webster Ave. Bronx, New York.

17. Defendant Ogbonuba is a principal of Defendant Top Class, Defendant Sunshine, and Defendant Heritage.

18. Defendant Ogbonuba operates a number of businesses on the second floor of 1150 Webster Avenue, Bronx, NY, including Defendant Top Class and Defendant Sunshine.

19. Defendant Ogbonuba also provide medical office space to physicians on the second floor of 1150 Webster Avenue, Bronx, NY.

20. By way of example, Defendant Ogbonuba provided space to a podiatrist and neurologist.

**Defendants Hire Jannette Negron.**

21. Defendant Ogbonuba hired Jannette Negron to provide services for Defendant Top Class as the call person.  Defendant Ogbonuba informed Jannette Negron that he was hiring her to provide office support to medical practices.

22. Defendant Ogbonuba assigned Jannette Negron to work with a pain management practice that rented space inside of 1150 Webster Avenue.

23. Jannette Negron worked for Defendants from February 2017 through April 23, 2021.

24. Defendant Ogbonuba and his assistant, Defendant Anna Marie Thompson, managed Jannette Negron.

25. Initially, Defendant Ogbonuba and Defendant Thompson required Jannette Negron to perform the following duties for the pain management practice:

a)  Assist with patients,

b)  Print medical notes from the visits,

3

Complaint-Negron

c) Scan paperwork such as physical therapy notes, doctor follow up forms and other miscellaneous documents,

d) Complete authorization paperwork required by the insurance carriers

e) Complete a report to let Defendant Ogbonuba know how many back braces, knee braces or ankle braces would be needed the following day;

f) Participate in office meetings with Defendant Ogbonuba or Defendant Thompson.

26. Completing all of the paperwork for one person could take up to 30 minutes.

27. The amount of work assigned to Jannette Negron could not be completed during regular work hours.

28. As a result, Jannette Negron took paperwork home everyday after work in order to ensure that everything was done in a timely manner.

29. Jannette Negron provided her paperwork to Defendant Ogbonuba and Defendant Thompson.

30. Defendant Ogbonuba on behalf of Defendant Heritage directed Jannette Negron to write up orders for the braces. Defendant Heritage supplied the order form for Jannette Negron to use. Defendant Ogbonuba confronted Jannette Negron whenever the forms were untimely or improperly completed.

31. The back braces, knee braces, and ankle braces were provided by Heritage Medical Supply, a company owned by Defendant Ogbonuba.

32. The pain management practice employed up to three physical therapists and one doctor per day, Monday through Friday. Up to 80 patients per day would obtain treatment.

33. By 2019, Jannette Negron was promoted and became the office manager for the pain management office.  Jannette Negron's duties expanded and she was responsible for

a) calling patients to remined them about their appointments,

b) opening the office in the morning and

c) closing the office at the end of the day.

4

34. The amount of work assigned to Jannette Negron could not be completed during regular work hours.

35. As a result, Jannette Negron took paperwork home everyday after work in order to ensure that everything was done in a timely manner.

36. Defendant Ogbonuba and Defendant Thompson were in direct daily contact with Jannette Negron.   They would speak with her to ensure that the paperwork was completed, that patients were called that the medical practice operated properly and all work was properly completed.

37. The medical practice had cameras. Defendant Ogbonuba or Defendant Thompson could view the cameras to oversee the employees. Defendant Ogbonuba and Defendant Thompson called Jannette Negron a number of times to ask her specific questions about the office and give her work instructions. By way of example Defendant Ogbonuba or Defendant Thompson would call Jannette Negron and ask her why she or other office employees did not appear to be doing their assigned tasks.

38. Jannette Negron was required to perform work for Defendant Sunshine.  Every morning, she opened up Defendant Sunshine to let employees inside.  Additionally, Defendant Thompson called Jannette Negron in the morning and gave her the breakfast menu that she then communicated to Defendant Sunshine's cook.

39. Defendant Top Class used timesheets and eventually used a computer system to keep track of employee time.

40. Jannette Negron was required to write on the timesheets that she worked from 9:00 AM to 5:00 PM every workday.  Whenever she wrote the hours she worked, Defendant Thompson would reject her timesheet and instruct Jannette Negron to write down 9:00 AM to 5:00 PM.

41. Thompson exempted Jannette Negron from using the computer system and using any written timesheets.  As a result, Defendants do not have a complete record of the hours Jannette Negron worked.

Complaint-Negron

42. Jannette Negron asked for overtime pay and full compensation for the hours she worked. Defendant Ogbonuba and Defendant Thompson would state in sum and substance WE DON'T PAY OVERTIME. Defendant Ogbonuba would state in sum and substance WE NEED TO GET THE NUMBERS UP BEFORE I WILL PAY OVERTIME.

43. Despite making those statement, Defendant Ogbonuba and Defendant Thompson knew that Jannette Negron worked extensive overtime.  Jannette Negron took a suitcase home filled with paperwork that needed to be processed and scanned.  She continued working at home. Defendant Ogbonuba and Thompson called Jannette Negron after normal work hours to inquire about the status of the paperwork she was processing and to get information for Defendant Heritage Medical Supply.

**Jannette Negron worked in excess of 40 hours per week without being paid wages and overtime.**

44. The medical practice was open from 9:00 AM to 5:00 Monday through Friday.

45. Jannette Negron arrived at work at 8:00 AM in order to open the doors to two medical offices, Defendant Sunshine and Defendant Top Class.   Employees from Defendant Sunshine relied on her to let them into work in the morning.  Jannette Negron continued working on the paperwork and fielded phone calls from Defendant Ogbonuba and Thompson.

46. During the day, Jannette Negron worked on her duties and received instructions from Defendant Ogbonuba and Defendant Thompson.

47. Jannette Negron did not have an uninterrupted period to eat her lunch.

48. Jannette Negron stayed in the office until 5:00 PM and 6:00 PM.

49. Jannette Negron would then go home with paperwork.  She would continue to work on the paperwork at home for between 2 to 3 ½ hours per night.

50. On the weekends, Jannette Negron caught up with the paperwork.  She 12 hours on Saturday and 10-12 hours on Sundays.

51. Jannette Negron worked no less than 80 hours per week.

52. Jannette Negron was paid $520.00 per week ($13.00 per hour X 40 hours) from approximately February 2017 through approximately July 2017.

53. Jannette Negron was paid $600.00 per week ($15.00 per hour X 40 hours) from approximately July 2017 through approximately November 2017.

54. Jannette Negron was paid $680.00 per week ($17.00 per hour X 40 hours) from approximately November 2017 through approximately March 2018.

55. Jannette Negron was paid $720.00 per week ($18.00 per hour X 40 hours) from approximately March 2018 through approximately July 2018.

56. Jannette Negron was paid $760.00 per week ($19.00 per hour X 40 hours) from approximately July 2018 through approximately December 2019.

57. Jannette Negron was paid $840.00 per week ($21.00 per hour X 40 hours) from approximately January 2020 through approximately February 2021.

58. Jannette Negron was paid $860.00 per week from ($21.50 per hour X 40 hours) approximately February 2021 through approximately April 23, 2021.

59. There were a number of instances where Defendants altered Jannette Negron's rate of pay. By way of example, Jannette Negron's final paycheck indicated that she was paid at the rate of $20.00 per hour.  Jannette Negron asked Thompson why here rate of pay was reduced. Thompson stated in sum and substance BECAUSE I WANTED TO DROP YOUR PAY.

60. At least one other employee also had her rate of pay reduced in their final paycheck.

61. Jannette Negron was paid a fixed amount each week by Defendants regardless of the number of hours she worked in excess of 40 hours per week.

62.  Jannette Negron's paychecks were issued by Defendant Top Class.

63.  Defendants never paid Jannette Negron an overtime premium.

64. If Jannette Negron missed a day of work, then Defendants would reduce Plaintiff's pay.

65. Defendant knowingly and willfully operated its business with a policy of not paying the New York State "spread of hours" premium to Plaintiff.

66. The work performed by Plaintiff required only a minuscule amount of discretion or independent judgment.

67. Plaintiff was neither responsible for, nor allowed to make, relevant decisions regarding policy, procedures, or protocol.

68. Plaintiff was subject to the control, policies, and procedures of Defendant in making decisions in the course of her employment.

69. Plaintiff was and is entitled to be paid for all hours she worked for Defendant.

70. Plaintiff is entitled to be paid (i) at her regular rate of pay for all hours worked less than forty (40) in a week, and (ii) the greater of one and half times the minimum wage or her regular rate of pay for each hour in excess of forty (40) hours that they worked in any workweek pursuant to the FLSA and NYLL and implementing regulations.

71. Defendant failed to pay Plaintiff an extra hour of pay at the minimum wage rate for each day that her workday ended more than ten (10) hours after it began (spread of hours pay), as required by the NYLL and its implementing regulations.

72. Defendant failed to give Plaintiff a written notice of her regular hourly pay rate, overtime hourly pay rate, the amount of tip credit as required by the FLSA and NYLL and the implementing regulations.

73. Defendant failed to give Plaintiff a written notice of any credits as required by the NYLL and the implementing regulations.

74. Defendant are not entitled to any credits to the minimum wage.

75. Defendant failed to provide Plaintiff with the notices required by NYLL §195(1).

76. Defendant violated NYLL § 195(3) by failing to furnish Plaintiff with a statement with every payment of wages, listing, among other things, hours worked, rates paid, gross wages, deductions, and net wages.

77. At all relevant times, Defendant failed to "post in a conspicuous place in his establishment, a notice issued by the Department of Labor summarizing minimum wage provisions." in violation of 12 N.Y.C.R.R. §142-3.9.

78. Defendant's posting, wage statement, and notice violations prevented Plaintiff from knowing her legal rights and from figuring out exactly how many hours for which she was not compensated.


### Retaliation

79. By letter dated August 20, 2021, Defendant Thompson issued a letter from Top Class Management that threatened Jannette Negron.


80. Defendant Thompson denied owing Jannette Negron any wages.


81. Defendant Thompson accused Jannette Negron of various improper acts including stealing money, from the company on multiple occasions; falsifying patient information; and being a drug user.


82. Defendant Thompson threatened Jannette Negron with possible arrest if she filed her lawsuit.


83. Defendants actions were done in retaliation of Jannette Negron asserting her rights to receive payment of her wages. Pursuant to the FLSA and NYLL.



### FIRST CAUSE OF ACTION
### Fair Labor Standards Act
### Failure To Pay Minimum Wage


9

Complaint-Negron

84. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

85. Defendants were required to pay directly to Plaintiff the applicable federal minimum wage for all hours worked.

86. The minimum wage provisions set forth in FLSA and the supporting federal regulations apply to Defendants and protect Plaintiff.

87. Defendants failed to properly disclose or apprise Plaintiff of their rights under the FLSA.

88. Defendants willfully violated the FLSA by failing to pay the minimum wage and/or overtime, a three (3) year statute of limitation applies to such willful violations pursuant to 29 USC §255.

89. At all relevant times, upon information and belief, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(s), 206(a) and 207(a).  Further, Plaintiff are a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 203(e), 206(a) and 207 (a).

90. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

91. Upon information and belief, at all relevant times, Defendant, had gross annual revenues in excess of $500,000.00

92. Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff should be in the possession and custody of the Defendants. Plaintiff intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

93. At all relevant times, the Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff for their hours worked in violation of 29 USC §§ 206 and 207.

94. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in the Complaint are unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

95. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as

Complaint-Negron

liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. §216.

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act
### Failure To Pay Overtime

96. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

97. Defendants have failed to pay Plaintiff overtime wages for all of the hours worked in excess of forty (40) hours in a work week.

98. At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff for hours worked in excess of forty hours per workweek in violation of 29 USC §§ 206 and 207.

99. Defendants willfully violated the FLSA by failing to pay the minimum wage and/or overtime, a three (3) year statute of limitation applies to such willful violations pursuant to 29 USC §255.

100.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. §216.

## THIRD CAUSE OF ACTION
### The Fair Labor Standards Act
### Retaliation

101.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102.    Defendants discharged or in any other manner discriminated against Plaintiff because such Plaintiff has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee in violation of FLSA §215(a)(3).

103.    As a result of Defendants' unlawful acts, Plaintiff has been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, post judgment interest, attorneys' fees, costs, and other compensation pursuant to FLSA §216(b).

Complaint-Negron

## FOURTH CAUSE OF ACTION
### New York Labor Law
### Failure to Pay Wages

104.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

105.    Defendants are required to pay Plaintiff wages earned at or above the minimum rate pursuant to NYLL 652(1).

106.    Defendants are required to pay Plaintiff wages earned in accordance with the agreed terms of employment pursuant to NYLL §191(1).

107.    Defendants failed to pay Plaintiff all wages earned.

108.    As a result of Defendants unlawful acts, in violation of the New York Labor Law, Plaintiff is entitled to recover from Defendants the full amount of any underpayments, liquidated damages, prejudgment interest, attorneys' fees and costs pursuant to NYLL §§198(1-a) and 663(1).

## FIFTH CAUSE OF ACTION
### New York Labor Law
### Failure to Pay Overtime

109.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

110.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff.

111.    Defendants have failed to pay Plaintiff overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

112.    Through their knowing or intentional failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per week, Defendants have willfully violated the NYLL Article 19, §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations including but not limited to 12 NYCRR Part 142.

Complaint-Negron

113.    As a result of Defendants' unlawful acts, Plaintiff have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, post judgment interest, attorneys' fees, costs, and other compensation pursuant to NYLL §§ 198 and 652.

## SIXTH CAUSE OF ACTION
### New York Labor Law Retaliation

113.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

114.    Defendants discharged, penalized, or in any other manner discriminated against any Plaintiff because such employee has made a complaint to their employer, that the employer has violated any provision of the NYLL, or because such employee has caused to be instituted a proceeding under or related to this chapter, or because such employee has testified or is about to testify in an investigation or proceeding under this chapter.

115.    As a result of Defendants' unlawful acts, Plaintiff has been deprived of overtime compensation and other wages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, post judgment interest, attorneys' fees, costs, and other compensation pursuant to NYLL §215.

## SEVENTH CAUSE OF ACTION
### New York Labor Law
### Spread of Hours Pay

115.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

116.    Defendants willfully failed to pay Plaintiff additional compensation of one hour's pay at the minimum hourly wage rate for each day during which they worked more than 10 hours.

Complaint-Negron

117.    By Defendants' failure to pay Plaintiff, Defendants willfully violated NYLL Article 19, §§ 650 *et seq*. and the supporting New York State Department of Labor regulations.

118.    Due to Defendants' violation of the NYLL, Plaintiff is entitled to recover from Defendants' unpaid wages, liquidated damages, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest pursuant to NYLL §§198 (1-a) and 663.

## EIGHTH CAUSE OF ACTION

### New York Labor Law
### Notice & Wage Statement Violations

119.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

120.    Defendants have willfully failed to supply Plaintiff with the notice required by NYLL § 195(1), in English or in the languages identified by Plaintiff in their primary language, containing their "rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

121.    Defendants willfully failed to supply Plaintiff with an accurate statement of wages as required by NYLL § 195(3), containing the "dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if

14

applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

122.   Due to Defendants' violations of the NYLL§ 195(1), Plaintiff is each entitled to $50 dollars for each workweek in which the violations occurred or continue to occur, or a total of $5,000.00 as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

123.   Due to Defendants' violations of the NYLL§ 195(3), Plaintiff is each entitled to recover from DEFENDANT $250.00 for each workweek on or after April 9, 2011, on which the violations occurred or continue to occur, or a total of $5,000.00, as provided for by NYLL § 198(1)-d.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.   An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid wages and overtime compensation due under the FLSA, NYLL and 22 NYCRR Part 142;

d.   An award of liquidated and/or punitive damages as a result of Defendant' willful failure to pay minimum wage, regular wage and overtime compensation pursuant to FLSA and NYLL   §§ 198 (1-a) and 663;

e.   An award of unpaid "spread of hours" premium due under the NYLL;

f.   An award of damages for notice and wage statement violations pursuant to NYLL § 195;

g.   An award of prejudgment and post judgment interest pursuant to the FLSA and NYLL §§ 198(1-a) and 663;

15

h.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U. S. C. §216, NYLL §§ 198(1-a) and 663; and

i.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues as triable as of right by jury.

Dated: Bronx, NY
        September 27, 2021

The Law Office of Delmas A. Costin, Jr., P.C.


By: _____/s/_____
    Delmas A. Costin, Jr., Esq.
    930 Grand Concourse, Suite 1F
    Bronx, NY 10451
    (718) 618-0589 (O)
    (347) 510-0099 (F)
    dacostin@dacostinlaw.com

    *Attorneys for Plaintiff*

16

Complaint-Negron